UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| United States of America | Criminal No. 3:09cr86 (JBA) |
|---|---|
| v. | September 16, 2009 |
| Troy Moody, Kisasi Green, and Tylon Mims | |

RULING ON TYLON MIMS' MOTION TO SEVER [Doc. # 31]

Defendant Tylon Mims has moved to sever his criminal trial from that of his co-defendant Kisasi Green. Mims contends that there is potential conflict between his defense theory and Green's and also argues that evidence relevant only to Green and co-defendant Troy Moody would spill over and improperly implicate him, causing Mims unfair prejudice in a joint trial. The Government opposes severance, and Green has not sought severance. For the reasons stated below, Mims' motion is denied in part as to Counts One through Four and remains under advisement as to Count Five.[1]

I.   Factual and Procedural Background

The relevant facts are as follows. On April 14, 2009, a federal grand jury indicted Troy Moody, Tylon Mims, and Kisasi Green for conspiracy to commit bank fraud. The indictment alleges that the three defendants conspired to commit bank fraud by stealing deposited business checks through two Bank of America employees, depositing those checks into unauthorized accounts, and then withdrawing the funds before the banks realized the

---

[1] Only Moody was indicted on Count Five of the indictment, which charges bank fraud, for engaging in a similarly structured scheme, without Mims or Green's involvement. Mims also moves to sever his prosecution from Count Five, but as of yet, Moody remains a fugitive. The Government has indicated that its position on severance of Count Five depends on whether Moody is apprehended before trial (Gov't's Opp'n Mot. Sever [Doc. # 34] at 12), so the Court declines to rule on Mims' motion as to Count Five at this premature date.

checks had been stolen. The Government intends to prove that Moody received checks stolen by two bank lockbox department employees, Brenda Jones and Lakischa Williams, some of which were distributed to Green and Mims. Then, Defendants allegedly directed other co-conspirators to open unauthorized bank accounts in the real payees' names, deposit the stolen checks in the newly-opened accounts, and withdraw the funds before the banks detected that the checks had been stolen. Mims allegedly directed women named Miosotis Garcia and Patricia May; Green directed Pamela Bozzuto; and Moody directed Taisaa Ramos.

II.     Legal Standard

Rule 14(a)(1) of the Federal Rules of Criminal Procedure provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." When co-defendants have been indicted together, "there is a preference in the federal system for joint trials" because they "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations omitted). Even when a joint trial would cause prejudice, severance is not required; rather, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538. Severance is only appropriate when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

Given the presumption in favor of joinder, the Second Circuit has held that a

defendant must establish a risk of prejudice that is "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). Among the factors to be weighed to determine prejudice are

> (1) the number of defendants and the number of counts; (2) the complexity of the indictment; (3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others.

*United States v. Ramos*, 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004) (citing *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987)). While "none of these factors is dispositive, each is intended to provide guidance as to whether a jury will be capable of considering the evidence as to each defendant separately, independent of evidence against co-defendants." *Ramos*, 346 F. Supp. 2d at 570 (citing *Gallo*, 668 F. Supp. at 749).[2]

III.   Discussion

    A.   Mutually Antagonistic Defenses

Mims' argument for severance is based in large part on the potential for conflict that may exist between his and Green's respective defenses. According to Mims, "[d]efense counsel for Moody and Green each has indicated that their respective defenses likely will include identifying the other defendant as the actual participant in Moody's scheme." (Mims' Mem. Supp. Mot. Sever [Doc. # 31-1] at 2.) Mims points to evidence that May—whom he

---

[2] Mims suggests that the "limited number of defendants" weighs in favor of severance. (Mims' Mem. Supp. Mot. Sever at 6.) Yet the proper weighing of this factor is whether the number of defendants is so great as to warrant severance, *Ramos*, 346 F. Supp. 2d at 570, which is not the case here.

3

is alleged to have directed—identified "Kassafi" as the man who recruited her, implicating Kisasi Green, rather than Mims. (*Id.*) Additionally, he claims that both his and Green's best defenses "may be" to deny participation in Moody's scheme and identify one another as Moody's co-conspirator (*id.* at 5 ), but does not demonstrate if or how such defenses are "mutually antagonistic" in the sense of being mutually exclusive.

Severance is justified–although not required–when defenses are mutually antagonistic, that is, when "accepting one defense requires that the jury must *of necessity* convict a second defendant." *United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) (emphasis added); *see also Zafiro*, 506 U.S. at 538 (describing mutually antagonistic defenses as being "irreconcilable"). Mutually antagonistic defenses are not prejudicial per se. *See Zafiro*, 506 U.S. at 538. Even when "the defendants are hostile or attempt to cast the blame on each other," severance is "not necessarily warranted." *United States v. Casamento*, 887 F. 2d 1141, 1153–54 (2d Cir. 1989), *cert. denied*, 493 U.S. 1081 (1990).

A jury's determination that Green was not involved in the charged conspiracy does not mandate a finding of culpability of Mims and vice versa. The jury could find both defendants were conspirators, or only one, or neither, *i.e.*, a conspiracy only among Moody and the other co-conspirators not named in the indictment, or could find no conspiracy as charged. Green's success in discrediting the Government's evidence that he was involved in Moody's conspiracy would not require the conclusion that Mims was so involved. Conversely, the jury's conclusion that Green is guilty does not necessarily exonerate Mims.[3]

---

[3] Mims has not satisfactorily explained why prejudice from either of the hostile defenses would not be adequately inoculated by jury instructions crafted for this purpose. In *Yousef*, in which one co-defendant stated after arrest that he had been "duped" by the other into conspiring to bomb the World Trade Center, the Second Circuit was satisfied as

4

*See Zafiro*, 506 U.S. at 540 (holding that defenses were not mutually antagonistic or unduly prejudicial when co-defendants both argued that each was innocent and the other was culpable); *see also id.* at 542 (Stevens, J., concurring) (explaining that it was possible that neither co-defendant knew that the container in question was filled with narcotics).

      B.     Evidentiary Spillover

Mims also argues that his trial should be severed from Green's because he would be prejudiced during trial by "spillover" evidence offered only against his co-defendants. (Mims' Mem. Supp. at 7–8.) The Second Circuit has held that "[a] defendant raising a claim of prejudicial spillover bears an extremely heavy burden." *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988) (holding that defendant did not suffer prejudicial spillover because "most of the evidence of which he complains would have been admissible against him in a separate trial as acts of co-conspirators in the furtherance of a conspiracy."). The "typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants" and that individual trials would avoid that prejudice. *United States v. DiNome*, 954 F. 2d 839, 843 (2d Cir. 1992) (holding that there was no prejudicial spillover in the prosecution of seven of nine co-defendants charged with conspiracy and racketeering violations because "the evidence in question is relevant to the RICO charges against all defendants and most probably would have been admitted even if defendants had been accorded individual trials," but also holding that two co-defendants charged with mail and wire fraud, and not RICO violations, were prejudiced by evidence against their co-defendants

---

to the efficacy of a limiting instruction that read: "The issue of each defendant's guilt is totally personal to the individual defendant. You must make a separate determination as to whether or not any defendant's guilt as to the specific charge has been proven by a reasonable doubt." *Yousef*, 327 F.3d at 151.

"including vicious murders, loansharking, auto theft, pornography, and firearms trafficking," which was "irrelevant" to the charges against them.).

Thus, there is no spillover if the evidence presented in joint trial would be admissible in independent trials of co-defendants, as when multiple defendants are charged with one conspiracy. *See, e.g.*, *United States v. Diaz*, 176 F. 3d 52, 103 (2d Cir. 1999) (holding that evidence of gang-related violence and racketeering, entered against co-defendants, did not unduly prejudice Defendant Diaz, among other reasons, because it would have been admissible in independent trials of defendants to prove "1) the existence and nature of the Latin Kings and their RICO enterprise; and 2) a pattern of racketeering activity on the part of each RICO defendant by providing the requisite relationship and continuity of illegal activities"). Moreover, that one defendant's "role in a conspiracy may have been smaller or less central than that of certain other co-conspirators does not mandate a separate trial" on the grounds of prejudicial spillover. *United States v. Nersesian*, 824 F. 2d 1294, 1304 (2d Cir. 1987) (holding that there was no prejudicial spillover even though several co-defendants had a minor role in the conspiracy and claimed that "the evidence offered against them was minimal in comparison to that offered against other defendants").

Mims has not met his burden to show that potential prejudice caused by spillover justifies severance and cannot be addressed by limiting instructions and jury charges.[4] While Count One of the indictment charges all three co-defendants with conspiracy, and evidence

---

[4] Limiting instructions and jury charges instructing the jury to "assess the evidence against each defendant separately from the evidence presented against other defendants" are usually sufficient to mitigate any potential prejudicial spillover. *Diaz*, 176 F.3d, at 103 (citing *United States v. Carson*, 702 F.2d 351, 367 (2d Cir. 1983) ("holding that a judge's instructions to the jury to assess each defendant separately supports a finding of no spillover prejudice.").

against and about co-conspirators may be admissible against Mims if in furtherance of the alleged conspiracy, *see, e.g., Bourjaily v. United States*, 483 U.S. 171, 175 (1987) (hearsay statement made by a co-conspirator qualifies for a Fed. R. Evid. 801(d)(2)(E) exception if "[t]here [is] evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made 'during the course and in furtherance of the conspiracy'"), Counts Two and Three charge Mims and Moody with the substantive crimes of bank fraud, and Count Four charges Green and Moody with bank fraud.[5]  To track these distinct counts, the jury will receive preliminary and final instructions, and limiting instructions during trial as necessary, which will differentiate among these separate counts and the defendants charged in each.  The verdict form will also direct the jury's consideration to each count independently and will identify the specific defendants charged in each.

IV.     Conclusion

For the reasons stated above, and in the absence of any showing that factors of the number of counts, the complexity of the indictment, the estimated length of the trial, or the disparities in the degrees of involvement by the defendants in the overall scheme require severance, Defendant Tylon Mims' Motion to Sever [Doc. # 31] is DENIED as to Counts One

---

[5] Moody's work with Ramos forms the basis for the bank fraud charge in Count Five which implicates neither Green nor Mims.  If Moody is not apprehended in time for trial, Count Five will be severed.

through Four and remains under advisement as to Count Five.

>IT IS SO ORDERED.


>_____/s/_____
>Janet Bond Arterton, U.S.D.J.


>Dated at New Haven, Connecticut this 16th day of September, 2009.